UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| THOMAS SWIFT, | } |
| Plaintiff, | } |
| v. | } Case No.: 2:19-cv-00584-RDP |
| ANTHONY B. PURCELL, et al., | } |
| Defendants. | } |

## MEMORANDUM OPINION

This case is before the court on Plaintiff Thomas Swift's ("Plaintiff") Motion to Remand for Lack of Subject Matter Jurisdiction (*see* Doc. # 9) and Defendants Purcell and Knight's and Defendant Steris Corp.'s Motions to Dismiss (*see* Docs. # 3, 7). Plaintiff's Motion for Remand has been fully briefed (*see* Docs. # 9, 11, 12) and is ripe for decision. Defendants' Motions to Dismiss, though not fully briefed, are also ripe for decision, as discussed below. After careful review, and for the reasons explained below, Plaintiff's Motion to Remand is due to be denied, Defendants Purcell and Knight's Motion to Dismiss is due to be granted, therefore dismissing without prejudice Plaintiff's claims, and Defendant Steris Corp.'s Motion to Dismiss is moot, as Plaintiff is directed to amend his pleadings.

### I.  Background

Plaintiff brought a wrongful death action in the Circuit Court of Jefferson County, Alabama on March 14, 2019 against STERIS Corp. ("Steris Corp."), Anthony B. Purcell ("Purcell"), in his individual capacity, and Kevin B. Knight ("Knight"), in his individual capacity. (Doc. # 1-3 at 8, 9-10).

1

The claims asserted in this case arise from the tragic events that occurred on March 14, 2018. Plaintiff is the widower and personal representative of the estate of Nancy Swift, the deceased ("Swift"). (Doc. # 1-3 at ¶ 1). At the time of the event, Swift was employed by University of Alabama-Birmingham ("UAB") Highlands Hospital as a registered nurse, and she worked on the second floor of the building. (*Id.* ¶ 4). Swift worked with her colleague, Tim Isley, who is "an instrument management supervisor" allegedly employed by Defendant Steris Corp. (*Id.*). Both Swift and Isley supervised the operations and daily work of Trevis Devon Coleman, an employee of Central Sterile Supply. (*Id.*). Plaintiff alleges that Swift and Isley knew or should have known that Coleman had violent propensities because "Coleman had shown signs and concerns over his job performance and a hostile attitude leading up to [the] evening." (*Id.* ¶ 5). Defendant Purcell was the Associate Vice President and Chief of Police at UAB, and his department "maintained and operated a hospital precinct, which included UAB Highlands Hospital. (*Id.* ¶ 2). Defendant Knight was a Sergeant and the Security Manager for UAB Highlands Hospital. (*Id.* ¶ 3).

On March 14, 2018, Coleman brought a firearm onto the premises of UAB Highlands Hospital. (*Id.* ¶ 5). Coleman proceeded to the second floor and placed the firearm in the desk of Swift. (*Id.*). At approximately 7:00 p.m. on the evening of March 14, 2018, Coleman retrieved the firearm from Swift's desk and shot and killed Swift and seriously injured Isley. (*Id.* ¶ 6). Coleman then shot himself. (*Id.*). Plaintiff contends that all defendants were negligent in allowing Coleman to enter the building with a firearm. (*Id.* ¶ 7). Plaintiff also contends that Purcell and Knight, in their individual capacities, "were acting beyond the scope of their authority and in contravention of written guidelines, policies, and procedures when they negligently caused or negligently allowed insufficient, inadequate[,] and dangerous acts and omissions to impair the security at UAB Highlands Hospital." (*Id.* ¶ 8). Specifically, Plaintiff alleges that both Purcell and Knight failed to

2

adhere to and assure the performance of guidelines, policies, and procedures that would keep metal detectors maintained and operated. (*Id.*). And, with regard to Steris Corp., Plaintiff contends that it had a "contract or business relationship" with UAB Highlands Hospital regarding instrument management and sterility, and that it failed to "take notice and action to eliminate or control the hostility and attitude of Coleman" during the performance of his work. (*Id.* ¶ 10).

Steris Corp. timely filed its Notice of Removal on April 18, 2019 and argued that because Purcell and Knight were fraudulently joined to destroy diversity jurisdiction, the court should not take those parties into consideration when determining whether diversity jurisdiction exists. (Doc. # 1). After Plaintiff filed his Motion to Remand, Steris Corp., Purcell, and Knight filed their responses in opposition. (Docs. # 11, 12).

## II.     Standard of Review

The court begins its analysis by determining the proper standards of review that apply to the arguments at issue.

### A.  Motion to Remand

The court has an obligation to inquire into its own jurisdiction. *Univ. S. Ala. V. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). "[R]emoval jurisdiction is no exception to . . . [this] obligation." *Id.* Under 28 U.S.C. § 1441(a), a defendant may remove an action brought in state court to a United States district court that has original jurisdiction--either federal question or diversity jurisdiction. Under 28 U.S.C § 1332(a), a federal district court has diversity jurisdiction over parties who are completely diverse in citizenship to one another and who exceed the statutorily prescribed amount in controversy of $75,000, exclusive of interest and costs. *Underwriters at Llyod's, London v. Osting-Schwinn*, 613 F.3d 1079, 1085 (11th Cir. 2010). A "party commencing suit in federal court [under § 1332] . . . has the burden of establishing, by a

3

preponderance of the evidence, facts supporting the existence of federal jurisdiction." *Underwriters*, 613 F.3d at 1085.

In a removal case alleging fraudulent joinder, "the removing party has the [heavy] burden of proving that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997); *B, Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. Unit A 1981). "The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties."[1] *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998). And, in deciding whether a case should be remanded, the court "must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff." *Miller Brewing Co.*, 663 F.2d at 549.

"When considering a motion for remand, the court is not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law;" "[i]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Miller Brewing Co.*, 663 F.2d at 549; *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440-41 (11th Cir. 1993), *superseded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533 (11th Cir.1993).

---

[1] Both Purcell and Knight submitted affidavits with Steris Corps.' notice of removal. (Docs. # 1-1, 1-2).

### B. Rule 12(b)(1) Standard

Under Rule 12(b)(1), an attack on subject matter jurisdiction is either facial or factual. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990). Facial attacks "require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* at 1259.

Factual attacks, on the other hand, challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings." *Id.* at 1529. When the challenge is a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* (quoting *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981)); *Ex Parte Safeway*, 990 So. 2d at 350 ("[A] court deciding a Rule 12(b)(1) motion asserting a factual challenge 'must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss.'" (quotation omitted)).

Here, although Defendant has not been specific, the court determines that Defendant's attack is facial because it attacks Plaintiff's specific claims in the pleading.

### C. Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked

5

assertion[s]" without supporting factual allegations. *Id.* at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. Appx. 136, 138 (11th Cir. 2011) (unpublished) (quoting *Am. Dental Assn. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

**III.    Analysis**

    **A.  Motion to Remand**

In its notice of removal and opposition response to Plaintiff's Motion to Remand, Steris Corp. argues that Plaintiff fraudulently joined Purcell and Knight to defeat complete diversity and keep this case in state court.[2] (Doc. # 1 at ¶ 9). In particular, Steris Corp. contends that Plaintiff cannot establish a claim against Purcell and Knight because (1) they had no duty to protect Swift from the violent acts of James Coleman (*see* Doc. # 11 at 1); (2) their claims are barred by sovereign, state-agency, and/or co-employee immunity; and/or (3) Plaintiff's claim is barred due to Swift's contributory negligence.[3] (Doc. # 11 at 1-2). The court addresses each argument, in turn, and concludes that Purcell and Knight have been fraudulently joined. Therefore, Plaintiff's Motion to Remand is due to be denied.

    **1. Plaintiff Has Not Sufficiently Alleged a Duty Owed to Swift**

"Negligence is generally defined as the failure to discharge or perform a legal duty owed to another party. . . . [N]egligence means the failure to exercise reasonable or ordinary care." *Hicks v. Vulcan Eng'g Co.*, 749 So. 2d 417, 424 (Ala. 1999) (internal quotation marks omitted). To succeed on a claim of negligence, a plaintiff must establish that (1) the defendant owed the plaintiff

---

[2] In this case, determining whether subject-matter jurisdiction exists comes down to whether the parties are completely diverse. The amount in controversy is not in dispute. In light of the unique features of Alabama law, the amount-in-controversy requirement in wrongful death actions is generally always satisfied. *Roe v. Michelin N. Am., Inc.*, 637 F. Supp. 2d 995, 998-1000 (M.D. Ala. 2009) ("Alabama is the only State that allows only discretionary punitive damages in wrongful-death cases. . . ." The court noted that if the jurisdictional amount is readily deducible and clear from the facts alleged in the plaintiff's complaint, then the court will assume the amount-in-controversy element is met).

[3] Here, Steris Corp. alleges that because Swift and Isley were supervisors over Coleman, and because there had been "personal disputes and hostility on the part of Coleman" that Swift and Isley allegedly knew about, they were both contributorily negligent. (Doc. # 11 at 15). However, Defendants fail to assert how Swift and Isley were contributorily negligent. In any event, in light of the court's analysis of other issues raised in this case, the court need not discuss the merits of Steris Corp.'s assertion of contributory negligence.

a duty of care, (2) the defendant breached that duty, (3) there is causation (both actual and proximate) between the alleged act and the injury, and (4) the plaintiff suffered an injury. "[T]he existence of a duty is a question of law to be determined by the trial judge." *New Addition Club, Inc. v. Vaughn*, 903 So. 2d 68, 73 (Ala. 2004). In Alabama, "[i]t is the general rule . . . that absent special relationships or circumstances, a person has no duty to protect another from criminal acts of a third person." *Id.* (quoting *Moye v. A.G. Gaston Motels, Inc.*, 499 So. 2d 1368, 1370 (Ala. 1986)). It is well known that:

> Alabama law requires a plaintiff to show three elements to establish a duty that would be the basis for a cause of action such as the one presented in this case. . . . First, the particular criminal conduct must have been foreseeable. Second, the defendant must have possessed "specialized knowledge" of the criminal activity. Third, the criminal conduct must have been a probability.

*Id.* (quoting *Carroll v. Shoney's, Inc.*, 775 So. 2d 753, 756 (Ala. 2000)).

The *New Addition Club* decision is informative. There, the plaintiffs, as co-administrators of the estate of the decedent, filed a wrongful death action against the defendant, New Addition Club, Inc. 903 So. 2d 68, 69 (Ala. 2004). The decedent visited a nightclub with her daughter and her friend. While at the nightclub, an argument erupted between two other patrons, who eventually left the nightclub and went outside to the parking lot. *Id.* Both patrons began to fight, and the decedent's friend tried to step in. Unfortunately, one of the patrons retrieved a gun and shot the decedent. *Id.* The estate of the decedent brought suit against the nightclub and one of its owners, individually, alleging, *inter alia*, general negligence. *Id.* The court held that the plaintiff's failed to prove "(1) that it was foreseeable that [the defendant] would shoot and kill [the plaintiff decedent], (2) that the Club had specialized knowledge that a killing of this type could occur, and (3) that the killing was a probability." *Id.* at 75. Indeed, the court also held that "the particular

8

criminal activity, not just any criminal activity, must be foreseeable."[4] *Id.* at 76 (internal quotation marks omitted). While "[t]he Club was aware that some type of criminal activity—an assault and battery—had previously occurred, . . . nothing suggest[ed] that the Club knew, or had reason to know, that [the defendant] would kill [the plaintiff decedent]." *Id.*

Here, Plaintiff must show there is a possibility this claim can be established against the nondiverse defendants. That is, he is required to plausibly allege that (1) it was foreseeable Coleman would shoot and kill Swift, (2) Purcell and Knight had specialized knowledge that this killing could occur, and (3) Coleman killing Swift was a probability. *Id.* Pursuant to the pleading standards set out in *Twombly* and *Iqbal*, the court concludes that Plaintiff's allegations about Purcell and Knight's knowledge of Coleman's alleged violent propensity and hostile attitude lack the requisite factual support for surviving a Rule 12(b)(6) motion. The court also concludes that because Plaintiff cannot maintain a negligence claim against Purcell and Knight, they have been fraudulently joined and cannot remain in this lawsuit.

First, Purcell and Knight did not owe Swift a duty. *Wright v. City of Ozark*, 715 F.2d 1513, 1516 (11th Cir. 1983) ("[A]lthough police officers owe a general duty of care to the public at large, they owe no duty to any particular member of the public, absent a special relationship."). Here, there are no factual allegations suggesting that it was foreseeable for Purcell and Knight to anticipate Coleman shooting and killing Swift. While Plaintiff argues that Coleman had prior disciplinary actions taken against him and had shown hostility towards Swift (*see* Doc. # 3 at 9), there is not a plausible allegation that Purcell and Knight (1) knew that Coleman possessed a gun

---

[4] In *New Addition Club*, the Alabama Supreme Court detailed the types of crimes that had previously occurred at the nightclub, such as patrons fighting, at least one shooting, and multiple violent incidents involving the specific defendant who killed the plaintiff decedent. However, this was not enough to establish foreseeability for the particular violent act at issue. *New Addition Club*, 903 So. 2d at 75.

9

or would engage in violence against Swift; (2) had any type of specialized knowledge that Coleman could kill Swift; or (3) knew that Coleman killing Swift was a probability. (*See id.*). Neither Officer had received any information "regarding any specific threats directed at [] Swift . . . by [] Coleman." (Docs. # 1-1 at ¶ 3; 1-2 at ¶ 3). Additionally, neither Officer was "personally aware of any disputes [] Coleman had with [] Swift." (Docs. #1-1 at ¶ 2; 1-2 at ¶ 5). And most importantly (to their defense), neither Officer had "personal knowledge whatsoever of [] Coleman, [] Swift, or [] Isley before the shooting at UAB Highlands Hospital on March 14, 2018." (Docs. #1-1 at ¶ 6; 1-2 at ¶ 6); *Biggerstaff v. Constable*, 2012 WL 2923993, at *6 (N.D. Ala. July 12, 2012) ("[E]ven if a duty existed, it is unreasonable to expect [the defendant] to intervene when a duty only arises if circumstances were such that intervention was possible." (internal quotation marks omitted)). Therefore, the court concludes that Purcell and Knight did not owe a duty to Swift on the evening in question.

Second, the court deduces that there was no special relationship between Purcell and Knight and Swift that would create a duty. "[A] defendant has a duty to protect a plaintiff on the basis of [a] special relationship 'when the defendant knew or had reason to know of a probability of conduct by third persons that would endanger the plaintiff.'" *Willet v. United States*, 24 F. Supp. 3d 1167, 1174 (M.D. Ala. 2014). Similarly, under the same test, the court concludes that there were no special circumstances imposing a duty on Purcell and Knight to protect Swift. *See Emery v. Talladega Coll.*, 688 F. App'x 727, 731 (11th Cir. 2017).

Again, in their affidavits, Purcell and Knight state they had no knowledge whatsoever of Coleman or Swift before the shooting. (Docs. # 1-1 at ¶ 3-6; 1-2 at ¶ 3-6). The circumstances surrounding Swift's death are insufficient to create a special relationship between Swift (on the one hand) and Purcell and Knight (on the other). "[A] special tort duty . . . arise[s] when law

10

enforcement officers become directly involved in circumstances which place people within a 'zone of risk' (1) by creating or permitting dangers to exist, (2) by taking persons into police custody, (3) detaining them, or (4) otherwise subjecting them to danger." *Rivera v. Cohen*, 2009 WL 3157648, at *4 (M.D. Fla. Sept. 28, 2009). Purcell and Knight simply did not engage in any such activity.

Consequently, there is no possibility that Plaintiff can establish a negligence claim against the nondiverse Defendants, Purcell and Knight.

### 2. Sovereign Immunity

Defendants also argue that Plaintiff's claim cannot succeed against Purcell and Knight because they are both entitled to sovereign immunity. (Doc. # 11 at 8). Under Article 1, § 14 of the Alabama Constitution, "the State and its agencies have absolute immunity from suit in any court. This immunity extends to the state's institutions of higher learning." *Ala. St. Univ. v. Danley*, 212 So. 3d 112, 122 (Ala. 2016) (citations omitted). State officers and employees, sued individually, receive absolute immunity from suit "when the action is, in effect, one against the state." *Danley*, 212 So. 3d at 122; *Ex Parte Davis*, 930 So. 2d 497, 502 n.5 (Ala. 2005) ("The prohibition of Section 14 cannot be circumvented by suing the official or agent individually." (quoting *Milton v. Espey*, 356 So. 2d 1202, 1202 (Ala. 1978))).

> Whether immunity serves as a defense to an action against a state officer or employee sued in his individual capacity depends upon the degree to which the action involves a State interest. "Our cases adhere to the view that the State has an interest such as will prohibit suit against the State official or employee where the action is, in effect, against the State." When determining whether a State interest in an action against a state official or employee in his or her individual capacity is sufficient to trigger the immunity granted by § 14 [of the Alabama Constitution], our cases distinguish between the standards applied to those state agents or employees whose positions exist by virtue of legislative pronouncement and those who serve as the constitutional officers of this State. . . . [T]his court has consistently held that a claim for monetary damages made against a constitutional

11

officer in the officer's individual capacity is barred by State immunity whenever the acts that are the basis of the alleged liability were performed within the course and scope of the officer's employment.

*LeFrere v. Baldwin Cty. Comm'n*, 2008 WL 11428251, at *5-6 (S.D. Ala. Sept. 30, 2008).

There are currently six exceptions under Alabama law to the general rule that "actions for damages against State agents in their official or representative capacities are considered actions to recover money from the State and are barred by State immunity under § 14" of the Alabama Constitution. *Ex parte Aull*, 149 So. 3d 582, 589 (Ala. 2014). Specifically relevant here, "[t]he sixth 'exception,' as currently formulated, . . . allows 'actions for damages [to be] brought against State officials . . . *individually* where it was alleged that they had acted fraudulently, in bad faith, beyond their authority[,] or in a mistaken interpretation of law." *Ex parte Aull*, 149 So. 3d at 589 (emphasis added) (citation omitted).

Purcell is (and, at the time of the event, was), the Associate Vice President and Chief of Police at UAB. (Doc. # 1 at ¶ 2). Knight is (and, at the time of the event, was), UAB's Sergeant and Security Manager at UAB Highlands Hospital. (*Id.*). Both defendants may properly be considered "an arm of the state;" therefore, subject to any relevant exception, they are generally entitled to sovereign immunity. *Danley*, 212 So. 3d at 122.

Here, none of the exceptions apply. Plaintiff has not alleged that Purcell and Knight acted fraudulently, in bad faith, or under a mistaken interpretation of law. Rather, Plaintiff contends that Purcell and Knight were "acting beyond the scope of their authority and in contravention of written guidelines, policies[,] and procedures." (Doc. 1-3 at ¶ 8). Thus, the court focuses its analysis on whether Purcell and Knight were in fact acting beyond the scope of their authority on the night in question.

Plaintiff claims that Purcell and Knight failed to "adhere to and assure the performance of

guidelines, policies[,] and procedures that would keep such detectors maintained and operated at an appropriate level to detect and prevent the entry of firearms, . . . and such failure resulted from wither human error or mechanical malfunctions for detection or both." (*Id.*). Plaintiff also claims that Purcell and Knight "were negligent in the failure to properly train, instruct[,] and/or supervise others at [the metal detector] screening locations." (*Id.* ¶ 9).

However, as Plaintiff concedes in the Complaint, "the metal detectors installed . . . were working at the time pertinent to this incident." (*Id.* ¶ 8). Plaintiff has not put forth any factual assertion as to what the policies and procedures were that were violated, how Purcell and Knight failed to properly follow any particular policy or procedure, or how Purcell and Knight negligently allowed any policy or procedure to be violated. Relatedly, Plaintiff has failed to adequately plead who Purcell and Knight failed to properly train and/or supervise, what guidelines and instructions Purcell and Knight were required to follow in giving such instruction, or even whether Purcell and Knight had the responsibility to instruct, train, or supervise other UAB Highlands Hospital employees in the operation of the metal detectors. Plaintiff's conclusory allegations do not steer around the assertion of sovereign immunity by Purcell and Knight. That is, Plaintiff's claims simply do not fall within the sixth exception to the application of sovereign immunity under the Alabama Constitution because his complaint fails to sufficiently allege that Purcell and Knight were acting beyond the scope of their authority. Plaintiff's complaint is barred by the doctrine of sovereign immunity.

### 3. State-Agent Immunity

Under Alabama law, state-agent immunity "protects state employees, as agents of the State, in the exercise of their judgment in executing their work responsibilities." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 740 (11th Cir. 2010). Additionally, under Alabama Code § 6-5-

338(a) (1994), "[e]very peace officer . . . shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties." Alabama law employs a burden-shifting framework with state-agent immunity that every court must apply:

> A defendant initially bears the burden of demonstrating that he was acting in a function that would entitle the agent to immunity. If the state agent makes such a showing, the burden then shifts to the plaintiff to show that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority."

*Brown*, 608 F.3d at 741. "A [s]tate agent acts beyond authority and is therefore not immune when he or she 'fail[s] to discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist.'" *Ex parte Estate of Reynolds*, 946 So. 2d 450, 452 (Ala. 2006) (quoting *Giambrone v. Douglas*, 874 So. 2d 1046, 1052 (Ala. 2003)).

Here, Purcell and Knight were acting in a capacity that would entitle them to assert state-agent immunity. Both Purcell and Knight are UAB police officers who were employed at UAB Highlands Hospital. (Docs. # 1-1, 1-2). Purcell is responsible for "management of the personnel working at screening locations. . . . [He also] work[s] with UAB administration to use the resources allocated to these security measures, including metal detectors." (Doc. # 1-1 at ¶ 10). Knight is "tasked with overseeing and managing the officers involved in implementing UAB's security screening guidelines, policies, and procedures . . . on a daily basis, including those assigned to work at screening locations." (Doc. # 1-2 at ¶ 8). Therefore, Purcell and Knight have satisfied their initial burden.

The burden, therefore, shifts to Plaintiff. In the face of that burden, Plaintiff has failed to carry his burden, Plaintiff fails to adequately identify how Purcell and Knight acted "willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority." *Brown*, 608 F.3d at 741.

While Plaintiff alleges that Purcell and Knight acted beyond the scope of their authority, he has not put forth any plausible allegation indicating that Purcell and Knight acted in such a manner or violated any guidelines, policies, and/or procedures. In fact, Purcell asserts:

> There are no detailed rules or regulations, such as a checklist, governing the oversight and administration of the security measures in place at UAB Highlands Hospital. Rather [he], in consultation and collaboration with other UAB leaders, use[s] [his] best judgment on how to allocate limited resources to purchase equipment and to employ, train, and oversee the people tasked with the daily implementation of these efforts.

(Doc. # 1-1 at ¶ 11). Purcell is the quintessential state official who employs complete discretionary decisionmaking in his daily operations. Similarly, Knight states that there are also no rules or regulations governing his operations, but rather he, "in consultation with other UABPD leaders, use[s] [his] best judgment to employ, train, and oversee the people tasked with the daily implementation of these efforts." (Doc. # 1-2 at ¶ 9). Purcell and Knight are entitled to state-agent immunity because they are both state officials exercising "their judgment in executing their work responsibilities." *Brown*, 608 F.3d at 740. Plaintiff has simply failed to plausibly allege how Purcell and Knight were acting willfully, maliciously, fraudulently, in bad faith, or beyond their authority. Therefore, Purcell and Knight are entitled to claim state-agent immunity.

### 4. Co-Employee Immunity

Purcell and Knight argue that UAB, though not subject to Alabama's Worker's Compensation Act, has "a self-funded[,] on-the-job injury program for its employees and any disputes arising out of that program can be brought by the employee to the Alabama Board of Adjustment." (Doc. # 12 at 17). They further contend that the Alabama Legislature "incorporated the worker's compensation rules of liability, including co-employee immunity," into that particular compensation process. (*Id.*). With respect to co-employee liability, Alabama Code § 25-5-53

(1975) -- known as the Alabama Worker's Compensation Act -- states:

> The rights and remedies granted in this chapter to an employee shall exclude all other rights and remedies of the employee, his or her personal representative, parent, dependent, or next of kin, at common law, by statute, or otherwise on account of injury, loss of services, or death. Except as provided in this chapter, no employer shall be held civilly liable for personal injury to or death of the employer's employee, for purposes of this chapter, whose injury or death is due to an accident or to an occupational disease while engaged in the service or business of the employer, the cause of which accident or occupational disease originates in the employment. *In addition, immunity from civil liability for all causes of action except those based upon willful conduct shall also extend to the . . . employee of the same employer, or his or her personal representative.*

*Powell v. U.S. Fidelity & Guar. Co.*, 646 So.2d 637, 638 (Ala. 1994). Essentially, the Alabama Worker's Compensation Act requires "[a]n employee [to] forfeit[] all other rights against his employer, whether common law or statutory, for the rights granted under the Act." *Slagle v. Reynolds Metals Co.*, 344 So. 2d 1216, 1218 (Ala. 1977). Alabama Code § 25-5-31 (2006) adopts this same rule, as Purcell and Knight contend:

> When personal injury or death is caused to an employee by an accident arising out of and in the course of his employment, of which injury the actual or lawfully imputed negligence of the employer is the natural and proximate cause, he, or in case of death, his personal representative, for the exclusive benefit of the surviving spouse and next of kin, shall receive compensation by way of damages therefor from the employer; provided, that the injury or death was not caused by the willful misconduct of the employee or was not due to misconduct on his part, as defined in Section 25-5-51.

*See* Ala. Code § 41-9-68 (1975) ("The rules of Chapter 5 of Title 25 as to liability are to be followed in claims for the injury or death of convicts, in claims for employment related injury or death of any employee of a city or county board of education, college or university, and in claims for injury or death of any employee of the State of Alabama arising out of employment with the state where the said employee is not covered by an employee injury compensation program.").

Because Plaintiff has not alleged any willful conduct on the part of Purcell and Knight,

Plaintiff is prohibited from bringing a claim of co-employee liability. (Doc. # 12 at 17).

### 5. Purcell and Knight Were Fraudulently Joined

For the reasons stated above, the court finds that Plaintiff fraudulently joined Purcell and Knight, because there is no possibility of Plaintiff establishing a claim against either officer in their individual capacities.

### B. Defendants Purcell and Knight's Motion to Dismiss

Defendants Purcell and Knight filed their Motion to Dismiss on April 18, 2019. (Doc. # 3). As discussed above, sovereign immunity, state-agent immunity, and co-employee immunity bar all of Plaintiff's claims against Purcell and Knight. Therefore, Plaintiff's claims against both Defendants are due to be dismissed without prejudice.[5]

### C. Defendant Steris Corp.'s Motion to Dismiss

Defendant Steris Corp. filed its Motion to Dismiss on April 24, 2019. (Doc. # 7). Under Federal Rules of Civil Procedure 15(a)(1) (2005), "[a] party may amend its pleading once as a matter of course . . . before being served with a responsive pleading." Here, no defendant has served a responsive pleading to Plaintiff's Complaint. Therefore, Plaintiff has a right to amend his Complaint. However, had Defendants submitted a responsive pleading, this court would allow Plaintiff to amend his Complaint to provide him an opportunity to better articulate his claim(s) against Steris Corp. *Jemison v. Wise*, 386 F. App'x 961, 964 (11th Cir. 2010) ("[A] district court's

---

[5] The court dismisses Plaintiff's complaint ***without*** prejudice as to Purcell and Knight. A suit against the State or a state official who may validly claim immunity under Article 1, § 14 of the Alabama Constitution must be dismissed for want of jurisdiction. *See Ex parte Ala. Dep't of Transp.*, 978 So. 2d 17, 21 (Ala. 2007); *Larkins v. Dep't of Mental Health & Mental Retardation*, 806 So. 2d 358, 364 (Ala. 2001) ("[A]n action contrary to the State's immunity is an action over which the courts of this State lack subject-matter jurisdiction."). When a court dismisses a case for lack of subject-matter jurisdiction, the dismissal is without prejudice. *See Stalley ex rel United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229,1232 (11th Cir. 2008) ("A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice." (citing *Crotwell v. Hockman-Lewis Ltd.*, 734 F.2d 767, 769 (11th Cir. 1984))).

discretion to dismiss a complaint without leave to amend is severely restricted by Fed. R. Civ. P. 15(a)."). To be sure, "[w]here a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).

Due to the deficiencies in Plaintiff's Complaint as to the particular claims against Steris Corp., the court **DIRECTS** Plaintiff to file an amended complaint that clearly sets forth the claims against Steris Corp.

IV. **Conclusion**

For the reasons stated above, the court concludes that Plaintiff's Motion to Remand is due to be denied. The court also concludes that Defendants Purcell and Knight's Motion to Dismiss is due to be granted (dismissing Plaintiff's complaint against Purcell and Knight without prejudice), and Defendant Steris Corp's Motion to Dismiss is moot, and the court **DIRECTS** Plaintiff to file an amended complaint clearly setting forth the claims against Steris Corp.

**DONE** and **ORDERED** this November 7, 2019.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE